NOT FOR PUBLICATION                                    (Docket No. 20)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

———————————————————
                                                    :
LORILLARD TOBACCO COMPANY           :
                                                    :
                                                    :
            Plaintiff,                 :        Civil No. 11-1420 (RBK/AMD)
                                                    :
        v.                             :        **OPINION**
                                                    :
TROPICAL GROCERY STORE,              :
ABUL  KALAM AZAD,                     :
KHALEDA YESMIN,                       :
                                                    :
            Defendants.                :
———————————————————   :

**KUGLER**, United States District Judge:

This matter comes before the Court upon a Motion for Summary Judgment by Lorillard

Tobacco Company ("Plaintiff") on Count I of its Amended Verified Complaint against Tropical

Grocery Store ("Tropical") and Abul Kalam Azad ("Azad") (collectively, "Defendants").

Plaintiff alleges that Defendants are liable for selling counterfeit versions of Plaintiff's products

in violation of 15 U.S.C. § 1114(1)(a).  Defendants have not filed opposition to Plaintiff's

motion.

        For the reasons expressed below, the Court will grant Plaintiff's motion.


**I.      BACKGROUND**

        This lawsuit comes before the Court as a result of the Defendants' alleged sale of

counterfeit cigarettes bearing Plaintiff's registered marks.  Pl. Br. in Supp. of Summ. J., 1.

Plaintiff owns the Newport® and Lorillard® trademarks, which are associated with the leading

brand of menthol cigarettes and the second-leading cigarette brand in United States overall.  Id. at 2.  Plaintiff has owned the trademarks and associated trade dress, which are registered with the United States Patent and Trademark Office, since 1956.  Id.  Eight of Plaintiff's marks are at issue in this case.  Id.

Azad owns Tropical, a retail grocery store in Atlantic City, New Jersey.  Id. at 3.  On March 8, 2011, one of Plaintiff's employees entered Tropical and discovered what he believed to be three stale packs of Newport® cigarettes.  Id.  The employee replaced the stale products with fresh packs and sent the stale packs to Plaintiff's offices for further inspection.  Id.

An expert in identifying counterfeit product, employed by Plaintiff, examined the packs and determined them to be counterfeit.  O'Brien Dec., 1-2.  The expert first discovered that the tear tape used to remove the cellophane wrapping from cigarette packaging was more elastic on the packs removed from Tropical than on the authentic product.  Id. at 2.  Secondly, he noted that the printing on the side panels of the replaced packs were much clearer than that of Plaintiff's products.  Id.  Lastly, the expert noticed that the replaced packs contained out-of-date product codes which are no longer used by Plaintiff.  Id.  The combination of these observations led him to determine that the packs removed from Tropical were counterfeit.  Id.  Plaintiff received a court order authorizing a seizure at the store, conducted by members of the U.S. Marshal Service on March 22, 2011.  Pl. Br. in Supp. of Summ. J., 3.  No additional counterfeit cigarettes were found at that time.  Id.

Plaintiff claims that Defendants are strictly liable for selling the counterfeit cigarettes under Section 1114(1)(a) of the Lanham Act, which forbids the sale of products bearing counterfeited versions of another person's registered marks.  Pl. Br. in Supp. of Summ. J., 1, 5. Defendants submitted no opposition, but in their answer contended that they are not capable of

distinguishing between counterfeit and authentic cigarettes.  Def. Resp. to Pl. Amend. Compl., 1.

Defendants claim further that they discontinued sale of the counterfeit product as soon as they

became aware of the issue and that their suppliers are responsible for the counterfeit products

reaching their store.  Id.


II.     **LEGAL STANDARD**

     Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material

fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.

Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986).  When the Court weighs the evidence

presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor."  Id. at 255.

     The burden of establishing the nonexistence of a "genuine issue" is on the party moving

for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir.

1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the

absence of a genuine issue of material fact" or by 'showing' — that is, pointing out to the district

court — that there is an absence of evidence to support the nonmoving party's case."  Celotex,

477 U.S. at 325.

     Once the moving party satisfies this initial burden, the nonmoving party must "set out

specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving

party must "do more than simply show that there is some metaphysical doubt as to the material

facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to

survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the factfinder, not the district court.  BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.  DISCUSSION

Plaintiff asserts that summary judgment should be granted because there is no genuine issue of material fact as to Defendants' sale of the counterfeit cigarettes.  Defendants have not responded to Plaintiff's Motion for Summary Judgment but claim in their answer to Plaintiff's Complaint that the companies responsible for supplying the cigarettes to Defendants, rather than the Defendants themselves, should bear responsibility.

Plaintiff's Amended Complaint alleges a violation of Section 1114(1)(a) of the Lanham Act, which creates civil liability for any person who:

> use[s] in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

4

15 U.S.C. § 1114(1)(a).

      In the Third Circuit, trademark infringement is established when a plaintiff proves that: (1) the mark or marks are valid and legally protectable, (2) the marks are owned by Plaintiff, and (3) the defendant's use of marks to identify goods or services is likely to create confusion concerning the origin of goods or services.  A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 211 (3d Cir. 2000).  Plaintiff argues that its trademarks are valid and that consumers will be confused by Defendant's use of Plaintiff's trademarks.

      The first prong, validity and legal protectablity, as well as the second prong, ownership, can be established by demonstrating federal registration of a mark and use of the mark by the Plaintiff for the requisite period of time.  Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 291 (3d Cir. 1991).  A movant establishes that a mark is valid and legally protectable when the mark in dispute has become incontestable under 15 U.S.C. § 1065.  Ford Motor, 930 F.2d at 291.  Ownership is also established by a showing of incontestability.  Id.  A mark becomes incontestable if it is registered on the Principle Register and has been used continuously for five years.  15 U.S.C. § 1065.

      When a mark meets these requirements, the statute provides nine defenses which a defendant may assert to refute incontestability.  These include fraud in obtaining the registration or incontestability, abandonment of the mark by the registrant, or use of the mark with the permission of the registrant so as to misrepresent the source of the goods on which the mark is used.  15 U.S.C. § 1115(b).  Defendants have not forwarded any of these defenses and, as a result, this Court will not consider them.

      Plaintiff's marks are registered on the Principal Register and Defendant has not challenged the validity or legal status of Plaintiff's marks.  Plaintiff's marks have also been used

continuously for over five years and thus have obtained incontestable status. Other courts have recognized Plaintiff's marks to be valid and protectable trademarks. See, e.g., Lorillard Tobacco Co. v. Jamelis Grocery, 378 F. Supp. 2d 448 (S.D.N.Y. 2005); Lorillard Tobacco Co. v. S & M Cent. Serv. Corp., 2004 WL 2534378 (N.D. Ill. 2004). Accordingly, the marks are valid, legally protectable and owned by Plaintiff, satisfying the first and second prongs of the test for trademark infringement.

In addition to proving validity, protectability and ownership, Plaintiff must also establish that the use of marks by Defendants is likely to cause consumer confusion. A likelihood of confusion exists "when the consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." Id. Marks "are confusingly similar if ordinary consumers would likely conclude that [the two products] share a common source, affiliation, connection or sponsorship." Fisons Horticulture v. Vigoro Indus., 30 F.3d 466, 477 (3d. Cir. 1994). The Third Circuit applies a ten-factor test to determine if the use of a mark will cause consumers to assume the product comes from a different source bearing similar marks. See Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983). The factors should be used both in cases of competing goods and noncompeting goods. A & H Sportswear, 237 F.3d at 212-13.

In order to determine whether a likelihood of consumer confusion exists, the Court will consider: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods,

though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; and (9) the relationship of the goods in the minds of consumers because of the similarity of the product's function.  Lapp, 721 F.2d at 463.  The Court will also consider any other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.  Id.  Each factor must be weighed and balanced one against the other and none is determinative of the likelihood of confusion.  Checkpoint Sys., Inc. v. Check Point Software Techs., Inc., 269 F. 3d 270, 286 (3d Cir. 2001).   However, "the court often need not apply each and every factor."  A & H Sportswear, 237 F.3d at 216.

 Similarity between the marks in question is the single most important factor in determining the likelihood of confusion.  Id.  The proper test to be conducted in deciding the degree of similarity is not a side-by-side comparison but "whether the labels create the same overall impression when viewed separately."  Fisons, 30 F.3d at 477.  The "appearance, sound and meaning of the marks" should be considered in the analysis.  Checkpoint Sys., Inc. 269 F.3d at 281.  When products are directly competing and the marks are very similar, a district judge has discretion to consider the similarity of the marks alone.  Id. at 214.

The marks used on the products sold by Defendants were identical to the marks owned by Plaintiff.  "There is a great likelihood of confusion when an infringer uses the exact trademark."  S & R Corp. v. Jiffy Lube Int'l., Inc., 968 F.2d 371, 375 (3d Cir. 1992).  When viewed separately, the marks used on the packaging of the counterfeit products and Plaintiff's registered marks are indistinguishable.  O'Brien Dec., Ex. A; Lindsley Dec., Ex. 2.  The ordinary consumer would believe that the products sold by Defendants were manufactured by Plaintiff.  So, the first

factor weighs in favor of Plaintiff.  In fact, given that the products are identical and thus clearly competing products, this Court could resolve this dispute based solely on this factor.  The Court will, nonetheless, consider the remaining factors.

The Court next turns to the strength of the mark to determine the likelihood of consumer confusion.  In analyzing this factor the Court considers: (1) "the inherent features of mark contributing to its distinctiveness or conceptual strength" and (2) "the factual evidence of the mark's commercial strength or of marketplace recognition of the mark."  Sabinsa Corp. v. Creative Compounds, LLC, 609 F.3d 175, 184-85 (3d Cir. 2010).  This factor is employed by courts to determine the relative strength of different marks and the resulting impact on consumers.  Id.  Under the Lanham Act, greater protection is provided to stronger marks.  A & H Sportswear, 237 F.3d at 222.  Since the marks used by Defendant were identical to Plaintiff's marks, the Court cannot find that this factor weighs in favor of either party.

Consumer sophistication, the third factor, is evaluated by looking at the type of product bearing the mark and the type of buyer purchasing the product.  Checkpoint Sys., 269 F.3d at 284.  "Where the relevant products are expensive, or the buyer class consists of sophisticated or professional purchasers, courts have generally not found Lanham Act violations" because these purchasers are sophisticated enough to not be confused by similar marks.  Id.  However, there is no heightened standard of care for buyers when the consumer class for the product is a combination of professionals and ordinary consumers.  Id. at 285.

Cigarettes are a relatively inexpensive product and there are no "sophisticated or professional purchasers" in the class of cigarette consumers.  Consumers of cigarettes do not include professionals with specialized training as to the characteristics of cigarettes and cigarette packaging.  Unlike computer-security software, consumers of cigarettes do not "take great care

in purchasing" the product.  Checkpoint Sys., 269 F.3d at 285.  Rather, like the dietary

supplements in Sabinsa, cigarettes are advertised widely to a broad range of consumers and can

be obtained "as quick[ly] as a trip to the check-out counter."  Sabinsa, 609 F.3d at 186-87.  As a

result, buyers of cigarettes should not be held to a higher standard of care and should not have

been expected to discern the differences between Plaintiff's products and those sold by

Defendants.  Therefore, the third Lapp factor weighs in Plaintiff's favor.

Additionally, the Court considers evidence of actual confusion and the length of time the

mark was used without such confusion.  The Third Circuit has combined the fourth and sixth

Lapp factors and considered them as one.  See id. at 187.  While proof of actual confusion is not

necessary, evidence of actual confusion is highly probative as to a likelihood of confusion.  Ford

Motor Co., 930 F.2d at 292; Checkpoint Sys., 269 F.3d at 291.  Plaintiff has not offered evidence

of actual confusion.   Consequently, these factors do not weigh in favor of Plaintiff.

Next, the Court must look to Defendants' intent in using Plaintiff's marks.  Evidence of a

defendant's intent is not a prerequisite for finding a Lanham Act violation.  Checkpoint Sys., 269

F.3d at 286.   However, courts must look at whether the defendant adopted the mark to

intentionally confuse consumers.  Sabinsa, 609 F.3d at 187.  Here, Defendants claim that they

did not know that the cigarettes were counterfeit and sold the products bearing Plaintiff's marks

innocently.  Defendants' claim essentially amounts to a denial of intent to use Plaintiff's marks

and does not weigh in favor of Plaintiff.

The Court then considers the extent to which the parties' goods are marketed through the

same channels of trade.  There is a greater likelihood of confusion when the parties' advertising

and marketing campaigns are similar.  Checkpoint Sys., 269 F.3d at 289.  The Court must

examine trade exhibitions, publications and other media used by the parties to advertise their

products in examining this factor.  Id.  "This is a fact intensive inquiry."  Id. at 289.  The record

does not reveal any evidence that Defendant engaged in advertising to promote the products

bearing Plaintiff's marks.  Moreover, it is unlikely an independently-owned grocery store would

have the resources to advertise in a manner comparable to a leading national cigarette

manufacturer.  As a result, this factor does not weigh in Plaintiff's favor.

     The Court will also consider the extent to which the parties target the same group of

consumers.  "[W]hen parties target their sales efforts to the same consumers, there is a stronger

likelihood of confusion."  Checkpoint Sys., 269 F.3d at 289.  While Defendants made the

counterfeit products available for purchase, there is no evidence that they engaged in "sales

efforts", i.e., advertisement, that would be required in order for the Court to compare the targets

of the parties' efforts.  See id.; Sabinsa, 609 F.3d at 188-89; PB Brands, LLC v. Patel Shah

Indian Grocery, 331. Fed. App'x 975, 983 (3d Cir. 2009); 800-JR Cigar, Inc. v. GoTo.com, Inc.,

437 F. Supp. 2d 273, 298 (D.N.J. 2006).  Without a basis for comparison, the eighth factor

cannot weigh in favor of either party.

     Finally, the Court will examine the relationship of the goods in the minds of consumers

as to the product's function. When looking at this factor, courts should look at "how similar, or

closely related, the products are."  Kos Pharm. v. Andrx Corp., 369 F.3d 700, 723 (3d Cir. 2004).

The more closely related the products are, the greater the likelihood that consumers will be

confused.  Lapp, 721 F.2d at 462.  Given that the products in question are identical, it is clear

that this factor weighs in Plaintiff's favor.

     In sum, the Lapp factors considered weigh in favor of Plaintiff.  The products sold by

Defendant are identical in the marks used, overall appearance and the type of product in

question.  The average consumer of the products would not be able to tell the difference between

the products manufactured by Plaintiff and the counterfeit versions sold by defendant.   Finally, the weight given to the first factor in cases of competing products tips the scales in favor of Plaintiff.

Plaintiff has presented evidence that it owns the marks at issue and that they are valid and legally protectable.  In addition, Plaintiff has shown that Defendants' use of Plaintiff's marks is likely to cause confusion among consumers.  Defendants do not challenge the validity of Plaintiff's marks nor do they dispute that the use of Plaintiff's marks was likely to confuse consumers.  Thus, there is no genuine issue of material fact left to be resolved by the factfinder. Plaintiff is entitled to judgment as a matter of law.

IV.    **CONCLUSION**

For the reasons stated above, Plaintiff's motion for summary judgment is **GRANTED**. An appropriate order shall enter today.

Dated: _10/11/12_____                                    /s/ Robert B. Kugler_____
                                                         ROBERT B. KUGLER
                                                         United States District Judge